Thank you. Good morning. David Parker for Brother Records. I'd like to reserve two minutes at the end. In the military, when a subordinate wants to have a candid conversation with a superior, they ask, may I speak freely? And I, I hope I can indulge in that a little bit today. That's because somehow a very simple case involving the theft of rock and roll memorabilia ended up in the way it did in this court, and I want to explain. I say it's a simple case because we have a he said, he said. We have Mr. Shaka, who says he went down to a warehouse that was under the control of Brother Records, and he bought memorabilia. In fact, he dealt directly with the president of the company, and he bought that memorabilia at that warehouse sale involving Brother Records. Now, mind you, he has no evidence of payment. It was cash. He doesn't have receipts. He said he had one, but he can't produce one, and he tells us in his statement in his initial submission about witnesses that all these people are going to back him up. We take their depositions, and they undermine his testimony completely, but the case somehow became marked and marred by a lack of due process and, to be blunt, a kind of myopic obsession over assignments, and I have to say that my office was as guilty of that myopia as the other side, and I hope to step back. I've had the opportunity by reviewing the record to step back, and I know the court has as well, and I want to offer a different perspective. I gather your view on the assignments is that there's enough out there to suggest there's a question of fact as to whether there indeed were, whether they're oral or written, but some assignments out there. Well, certainly. I mean, we produced the assignments. We introduced a declaration from the lawyer who obtained the oral assignments before the lawsuit was filed, but the point that I want to make this morning is we didn't need the assignments, and we never said we did, but everybody became so focused and obsessed with assignments that we lost perspective, and the last time, well, before I make my point. What is it specifically that Judge Reel did here that your contending was an error? Well, two things. First, he granted summary judgment on a ground that wasn't even the basis for the motion. There is nothing in the original notice, nothing in the amended notice, nothing in the Ps and As, and no evidence whatsoever concerning how that merchandise came into the possession of Roy Shaka. The issue of whether or not he properly acquired it, to use the phrase Judge Reel used on the morning we argued the summary judgment motion, that was not tendered in that motion. They presented evidence on that issue for the first time in reply. You can't do that, and we objected. We objected to the evidence in writing. We objected at the hearing, and our objections were overruled. So the first point is the district court erred in granting summary judgment on a ground that wasn't even the basis for the motion, and as to which we had no opportunity to respond. The only saving grace, and the reason why it's so clear as a tribal issue of fact, has to do with the history that preceded the summary judgment motion when we had our case thrown out, had a $20 million default judgment about to be entered against us because a lawyer arrived 13 to 14 minutes late for a pretrial conference. In order to get out from under that incredible thing, because Judge Reel was still sitting there when he did arrive, and he had called, and there had been a medical emergency, we made a motion for relief, and in the context of that motion, we had to show we had a good case. So we laid it all out, and Judge Reel granted that relief, and then a month or so later, we're back with the summary judgment motion. So there was evidence from previously in the record that we could resort to, and we did present some of that by way of background in our opposition, but it wasn't the basis. The second reason why there was an error was because Judge Reel found there is no evidence of an assignment of rights to brother records. Well, I'm sorry, there's a declaration of a member of the bar who said, I secured those from each of the lawyers who are the representatives of the band members. That's evidence. And secondly, what we did was, when we came into the case late, our firm, we memorialized the assignments in writing. We did that in the context of the motion for relief, and we produced those documents right away. So at the time of the motion for summary judgment opposition, we produced the written assignments. Some were written, but did I understand from the record that one or more were oral? When the lawsuit was first filed, all four were oral. Okay. We created those four assignments and memorialized them back in December as we were preparing our motion for relief from the threatened default. But what I think is most important, and I learned a valuable lesson the last time I was here, and Judge O'Scanlan asked me about the Grand Canyon case, and I had to do a little bit of a two-step maneuver there because I didn't know the case. So I was determined this time, if any member of this panel has written an opinion that might be helpful to me, I was going to get it. Read every single case that we've each authored. Well, you know, we got lucky, and Judge Tallman is the one who gave us the opinion. And the opinion that I – well, there is another one that I'm going to mention, Judge O'Scanlan's decision, because I was here a few months ago arguing for Brother Records, and standing was the issue. And as Judge O'Scanlan knows, they issued a memorandum of opinion on April 2 of this year saying that following the Ninth Circuit's earlier decision in 1993 in the Jardine case that BRI, Brother Records, has standing. It was the same kind of an issue. It involved the original master recordings from the original 1962 recordings of the Beach Boys. And we had standing then. We have standing now. But what struck me when I read Judge Tallman's decision in Bank of New York v. Fremont General, 523 Feb 3, 902, at page 914, and Judge Tallman citing California authority on what is conversion. And I'm thinking to myself, back in the law school days, conversion involves taking property that either is owned by or that the victim has the right of possession. And that's exactly the point that scored in Judge Tallman's opinion. And so I stepped back and I said, wait a minute. We're looking at this the wrong way. They admit they bought it from us. They admit that they got the merchandise from a warehouse under control of Brother Records. They say they dealt with Brother Records' president. There's no question in the record. Brother Records had possession, had the right of possession. Indeed, they owned the property. Because, as the Ninth Circuit has ruled time and again, Brother Records is the way the band conducts its business. And this is, at the end of the day, a conversion case. The reason the assignments were important was simply that we didn't know how they would use that merchandise. If they take a photograph, it's a piece of paper. As a tangible piece of paper, it's owned by Brother Records. But if that has the likeness of Brian Wilson and they exploit that likeness, they may be violating some personal rights of his. And so we obtained assignments to cover the waterfront. But at the end of the day, we're talking about stealing our tangible property. That's conversion. And Brother Records owned it. Brother Records had it. And Brother Records has standing to assert it. And that's the other problem with Judge Reel's ruling. Because there was ample evidence, both of an assignment, but also that Brother Records didn't need an assignment. I think I'm inside my two, so I think I'll sit down. Thank you, counsel. You can reserve your remaining time. We'll hear from Mr. Yacocide. Thank you, Your Honor. Cress Templeton of the Diapole, Woyshak. In our view, Your Honors, the appellant, Brother Records, simply cannot get around the case of advanced magnetics. It's one of the few times that we see a purple-spotted cow, because the assignment that they rely on And let's talk about whether they need an assignment. Because that argument was raised for the first time here today. Throughout the entire underlying case, Brother Records fled. It bases its standing on an assignment from each of the Beach Boys. Never once did Brother Records raise an argument below that all that it needs is possession of the memorabilia in question. It's always been How does that get to assignments? I'm sorry? How does that relate to the assignment issue? Well, because what Brother Records says is, we don't own the alleged memorabilia that was taken. Brother Records has always pled. The Beach Boys owned it, and they assigned the right to us to sue on it. Brother Records has never put any evidence into the record that they own it. They've never claimed that they own it. There's never been any issue about whether Brother Records owns it. What about the comments Mr. Parker just made with respect to the assignments, which presumably got into the record, did they not? Actually, they didn't get into the record, and here's why, Your Honor. I'll answer that, but I'd also like to get back to the fact that even if they did get into the record, they're insufficient as a matter of law. The reason that they didn't get into the record is because what Mr. Parker said is that Brother Records' attorney spoke to each of the Beach Boys and got an oral assignment for the case. That alleged oral agreement was from a lawyer named McPherson, who is not in Mr. Parker's office. Mr. McPherson said he spoke to four people, none of whom were the Beach Boys, and he said they're all lawyers. The four people were a gentleman by the name of Harry Hathaway, a lawyer, Barry Mallon, a lawyer, Lawrence Noble, a lawyer, and Ross Schwartz, a lawyer. Are these all lawyers for individual Beach Boys? We don't know. We know that that's what Mr. McPherson said. Now, keeping in mind the procedural context of where we were, we were past the discovery cutoff. We were getting ready for our final pretrial conference. This is the first time Mr. McPherson, one, was ever identified as a witness having any knowledge relevant to the assignment. He was never disclosed in a Rule 26 disclosure. Are you ignoring all of the testimony from the depositions that you took, which clearly identified McPherson as an attorney who was involved in the assignment? What the witness said was he may have knowledge, and what we're allowed to rely on, Your Honor, is a Rule 26 disclosure that says this witness does have disclosure. Keep in mind that Mr. McPherson started out this case as a trial attorney. They asserted the attorney-client privilege to anything. We had no way of knowing if he had – we're not going to just notice the deposition of a lawyer involved in a case. In fact, you're prohibited from doing that unless they identify him as a witness in the Rule 26 disclosures. That's the whole purpose of identifying people as witnesses in Rule 26 disclosures, so you don't have to guess who has knowledge. Brother Records knows who has knowledge. We don't. If Brother Records doesn't tell us that they have a material witness in this case that has knowledge, we're allowed to rely on that under Rule 26. Secondly, none of the people that Mr. McPherson supposedly talked to and with whom he supposedly had an agreement were ever identified in any discovery response ever, neither in Rule 26 or any discovery response ever. These people are not the Beach Boys. We have no authentication. There's no foundation as to who these people are. There's no way to verify any of this. Well, why doesn't this go to the question as to whether there is a genuine issue of material fact as to whether the assignments are valid or not? Here's why. Because what Judge Reel did is Judge Reel excluded McPherson and Moran. Well, he didn't exclude Moran. Excuse me. He excluded McPherson because McPherson was never identified in a Rule 26 disclosure and also because he was never identified as a witness. And secondly, because the people with whom he allegedly spoke were never identified. And so that is an abuse of discretion standard there, Your Honors. So that's a discovery sanction? Is that what he did? No, it's an evidential ruling. You're not allowed to. So you're saying two things. You're challenging the foundation and the competency of the McPherson declaration. That's an evidentiary ruling. Correct. But you're also, as I thought I heard you say, telling us that what Judge Reel really did here was as a sanction for the Rule 26 violation, he also struck the McPherson declaration and the identities of the McPherson and whoever else these other lawyers are. And I guess also by striking the declaration, he struck the written assignments themselves, which were incorporated by reference in the declaration. Is that right? Unfortunately, it's mixing a few things there, Your Honor, and I'll try to piece them apart for you. And I'll take the last thing first because that's what's freshest in my mind. But the written assignments were attached to a declaration by a gentleman, by a lawyer, a former lawyer of Mr. Parker's office, Danny Moran. And was that declaration struck? No, that declaration wasn't struck. We said that declaration doesn't satisfy the requirements of Rule 56E. Although Mr. Parker says that Mr. Moran says he got this assignment from each of the representatives of the Beach Boys, that's just not true. If you look at the record, what Mr. Moran said is, I got these in the mail sometime in late December. He doesn't authenticate any of the signatures. He doesn't do anything else. All we know is there's four documents attached there. And the law is real clear under Rule 56E that you have to lay a foundation. You can't just slap documents onto a declaration and say that's what they are. He doesn't say that he's ever met the Beach Boys, that he ever spoke to the Beach Boys. He doesn't say that he represents them. He doesn't say that he's familiar with the signatures. He doesn't say anything. He just sticks them on there. Those don't come in as a matter of law, the written assignments. Now, secondly, with respect to the oral assignments, there were two components of it. You're right. One component of it is Judge Reel said McPherson was never disclosed in Rule 26 disclosure. Secondly, he said none of those other witnesses were. So that's not coming into evidence. He also, though, on McPherson's declaration, there was no foundation for the fact that these people, these lawyers with whom he spoke, had authority to speak on behalf of the Beach Boys. There's almost two levels of hearsay or agreement away. So none of this evidence really came in. But it really ultimately doesn't matter because what the court also concluded was that the assignments on their face don't do anything. They're merely, if you credit the testimony of all of their witnesses, at best what they are is a power of attorney to prosecute. And the advanced magnetics case in California law is clear. That doesn't confer standing to sue as a matter of law. And we just don't believe that they can get around that, Your Honor. I thought the Second Circuit in advanced magnetics also ruled that it was an abuse of discretion for the district court to refuse permission to amend the complaint in order to substitute the individual owner. And there's two ways to get around that, Your Honor. It's not getting around it. One. Distinguish it. Distinguish, yes. Well, the records never sought that relief below, one. Secondly, the Wolf case, which we cite in our brief, was very clear. If you know the identity of the real party in interest that you want to substitute in at the time you filed the case, you can't seek leave to amend to add them later.  In fact, it would be an abuse of discretion to add parties of whom they were aware at the time they filed the case who were the real parties in interest. Counsel, we have this request for judicial notice. I guess it's been filed by Mark Goldstein in the case of the Miami litigation involving Sciocca v. Brother Records. Do you have a perspective on this? That's a separate appeal, Your Honor. Mark Goldstein, I don't know about that. All right. Very fine. Okay. Since you were representing Mr. Sciocca, I wondered if you had anything to say about it. That's fine. Mark Goldstein represents Jim. Right. That was another appeal, and they waived oral argument. Right. So, no, I don't know anything about that. Very good. Anything further? If you have some other questions, Your Honor, I'd be happy to answer them. But the bottom line is there's a saying that this court, in a case not that long ago, said something that in some respects is sort of profound, in some respects sort of banal. But there's a case called Christian v. Mattel, and it's at 286, Fed Third, 1129. And what it said was, simply saying so does not make it so. And I think that really summarizes what we have here. They say a lot of things. They say that they have assignments with the Beach Boys, but there's no evidence. They say that this memorabilia was stolen. But nowhere in their entire case, anywhere in the evidence, did they have anybody that says, I went and eyeballed this memorabilia. It was available. And that's our memorabilia. We possessed it. I thought the dispute was over the fact that the president, I forget his name, of BRI, who was identified by your client as having been present at the day that the sale allegedly occurred, testified that he had no recollection of ever being present when Mr. Siaka purchased any memorabilia. BRI's president now is a gentleman by the name of Elliot Lott. What our client says is that he went to a warehouse liquidation sale that was publicized by the Beach Boys in the late 1980s. He says he went to three or four of those. At two of those sales, Mr. Lott was present. He wasn't present at the other. Mr. Lott says, I don't remember ever being present at any warehouse sale. But that still begs the question, was the memorabilia in question ever possessed or owned by the Beach Boys or Brother Records? Brother Records is bringing the case. For all we know, this warehouse sale that was publicized by the Beach Boys could have been liquidated by anybody. We don't know. Mr. Siaka didn't say, I went to the president of Brother Records and bought it from him. That's not what happened. He wasn't even the president. In the course of discovery, were the 13 or 26 boxes of material produced for inspection? They were produced for inspection and a log was made. Despite that, Brother Records never put any evidence in saying we looked at the log, we looked at the evidence, this was in our warehouse. Or the Beach Boys didn't say, we created this and this is ours. Nobody ever did that. Without evidence of ownership, you don't meet the requirements for an assignment. It requires ownership. Counsel, you've gone way over time. Before leaving the podium, both you and Mr. Parker should give those citations. You used a citation and Mr. Parker used a citation. We have gum sheets, which you need to fill out in sufficient copies, so each of you have been served and the court has been served. Okay. Thank you. Mr. Parker? Reading from page one of the response brief, whether the trial court properly granted Appali Roy Shaka a motion for summary judgment, because BRI had no competent or admissible evidence, and here's the key point, BRI owned the property and rights over which BRI was suing, or that BRI's ass and oars owned and assigned their ownership rights. They understood the distinction and it's easy enough because it's in the complaint. We alleged in the paragraph one of the complaint, this is page three of the excerpts of record, plaintiff is the corporate entity through which the Beach Boys conduct their business. And then in paragraph 13, we say in or about 1994, plaintiff decided to move its material to another warehouse. The irony is they make the case for the right of possession because they say they went to a Beach Boys facility and bought it from the Beach Boys, and they're even more specific, they bought it from the president. By the way, he was the president then as he is now, Elliot Lott. And Elliot Lott, with all due respect to Judge Tallman, he didn't say I don't recall. He was emphatic. It didn't happen. That's what I thought it was. It didn't happen. So we've got he said, he said, and the one thing they agree upon is that property once was in our warehouse and everybody agrees they're selling it as our property. They're marketing it as our property. It's Beach Boy memorabilia. So there's no question, this isn't the Kinks. This isn't some other band. It's the Beach Boys. So to me, we have a classic swearing contest over who owned it, whether it was acquired properly, and there's ample evidence that the Beach Boys company, Brother Records, operates the business, owns the property, and has standing. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: Thompson, O'scannlain, Tallman